UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JENNIFER EDWARDS,

        Plaintiff,         Case No. 17-cv-10648

v.         Honorable Thomas L. Ludington

ALDI, INC., a foreign Corporation,

        Defendant.
_____/

**ORDER DENYING MOTION FOR RECONSIDERATION**

On March 1, 2017, Plaintiff Jennifer Edwards filed a complaint against Defendant ALDI, Inc., alleging various violations of the Family Medical Leave Act (FMLA). Compl., ECF No. 1. Plaintiff alleges Defendant interfered with the exercise of her right to take leave under the FMLA, and retaliated against her for doing so by terminating her employment. *Id.* Plaintiff also alleges she was terminated for refusing to be complicit in fraudulent activity, in violation of public policy, and that she was discriminated against based on her disability. *Id.* After eight months of discovery, Defendant moved for summary judgment on February 19, 2018. ECF No. 27. Plaintiff responded on March 12, and Defendant replied on March 26. ECF Nos. 31, 32. On May 9, 2018, the Court entered an order granting Defendant's motion for summary judgment, and dismissing the complaint in its entirety. ECF No. 37. On May 23, Plaintiff filed a timely motion for reconsideration. ECF No. 39. A full factual summary was provided in the Court's May 9 order granting Defendant's motion for summary judgment. *See id.*

**I.**

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days. A motion for

reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

**II.**

Plaintiff's motion for reconsideration contends that the analysis in the Court's Order contains three palpable defects:

> First, this Court erred in failing to find that Plaintiff suffered from a "serious health condition" as defined by the Act . . . . Second and as a result of the first error, this Court erred in failing to find Plaintiff engaged in protected activity, which was based upon its prior improper reasoning that Plaintiff did not suffer a serious health condition. Lastly, this Court erred in failing to find a factual question regarding the issue of pretext.

Mot. at 1–2.

**A.**

**i.**

"For purposes of FMLA, a serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113. Inpatient care, in turn, "means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in §

825.113(b), or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. "Continuing treatment by a health care provider" includes, among other things,

> (c) Chronic Conditions. *Any period of incapacity or treatment for such incapacity* due to a chronic serious health condition. A chronic serious health condition is one which:
>
>> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>>
>> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>>
>> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

29 C.F.R. § 825.115(c) (emphasis added).

The term incapacity means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

**ii.**

In the May 9 Order, the Court found that Defendant had carried its burden to point to evidence in the record demonstrating that Plaintiff was not incapacitated:

> As Defendant notes, there is no evidence in the record that a medical provider ever determined that Plaintiff could not work because of her ear condition. Plaintiff testified that her condition did not prevent her from performing her job. 36:22-37:1; 47:6-13. When asked if her ear condition impacted her daily life activities, Plaintiff responded "no, I just did them" and later responded that she "pushed through, pain or no pain." Edwards Dep. at, 36:22-37:1; 46:16-25. No medical provider imposed any work restrictions on Plaintiff because of her ear condition. 42:2-8, 58:17-20, 116:16-19.

Order at 13-14. The Court noted that Plaintiff did not attempt to rebut this evidence with any factual or legal analysis. *Id.* Rather, Plaintiff simply recited the definition of a chronic serious health condition under 29 C.F.R. § 825.115(c) and concluded that her condition met that

- 3 -

definition. Plaintiff asserted that her condition "required period visits" and "caused episodic periods of incapacity." *Id.* However, Plaintiff offered no citation to the factual record nor did she indicate which periodic visits or episodic periods of incapacity she was referring to. Rather, Plaintiff referred the Court to "the record evidence summarized above." *Id.*

The Court found that this fell well short of Plaintiff's obligation at the summary judgment stage to identify a material issue of fact for trial, and the Court declined to comb through the factual record and attempt to piece together an FMLA interference claim on the Plaintiff's behalf. *Id.* (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (emphasis added).

In her motion for reconsideration, Plaintiff provides a lengthy overview of the amendments to the FMLA regulations and the case law interpreting those regulations, specifically in relation to the "incapacity" requirement. Mot. at 3–7. The main point of this discussion is that, according to Plaintiff, Defendant relied upon outdated and inapplicable case law to support "the proposition that to show incapacity, one must present evidence that a health care provider has determined the employee cannot work or could not have worked because of the illness." *Id.* at 4. Plaintiff contends that no such requirement exists. This discussion is non-responsive to the fact that Plaintiff herself testified that her condition did not prevent her from performing her job or performing her daily life activities. The Court found that this testimony (in addition to the lack of any medical evidence suggesting an inability to work), established the lack of any dispute of material fact as to whether she suffered a period of incapacity, and thus whether she suffered from a serious medical condition. Order at 13-14. Because Plaintiff does not address

this testimony, or why the Court's reliance on it was erroneous, Plaintiff has not identified a palpable error in the Court's reasoning.

**B.**

Next, Plaintiff argues that the Court erred in finding that Plaintiff did not engage in protected activity. This argument is predicated on Plaintiff's initial argument that the Court erred in finding she did not suffer from a serious medical condition, which was rejected above. Thus, Plaintiff has not established a palpable error in the Court's determination that she did not engage in protected activity.[1]

**C.**

Next, Plaintiff argues that the Court erred in finding that there was no question of fact as to pretext. Because Plaintiff did not engage in protected activity, however, she did not establish her prima facie case of FMLA retaliation, and a showing of pretext alone could not establish her retaliation claim. *See In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007). Nevertheless, the Court discussed Plaintiff's arguments concerning pretext as an alternative basis to sustain the Court's decision to grant Defendant summary judgment on the retaliation claim. The Court concluded that Plaintiff's explanation for the transaction giving rise to her termination (that it was authorized by Ms. VanNatta) was immaterial because that explanation was not shared with the decision maker, Ms. Snider, and was therefore not taken into consideration when Ms. Snider made her decision. Order. at 21. That analysis still stands.

---

[1] The Court also discussed the approach adopted by the court in *Johnson*, in which the court concluded that a retaliation claim "does not require proof that the plaintiff actually suffered a 'serious health condition,' only that the plaintiff gave adequate and timely notice to the employer that he or she needed leave for a condition that the plaintiff believed, in good faith, might be covered by the FMLA." Order at 16, ECF No. 37 (quoting *Johnson v. Dollar Gen.*, 880 F. Supp. 2d 967, 992 (N.D. Iowa 2012), aff'd, 508 F. App'x 587 (8th Cir. 2013). This Court concluded that, even under this alternative approach, Plaintiff still had not engaged in protected activity. Plaintiff does not identify any error in the Court's reasoning with respect to that analysis.

Plaintiff now argues that "the factual dispute (regarding whether Ms. VanNatta authorized the transaction) was and is material because the cat's paw theory of liability imputes Ms. VanNatta's discriminatory or retaliatory intent to Ms. Snider." Mot. at 11. Plaintiff argues that she should survive summary judgment "if there is a genuine issue of material fact as to whether Ms. VanNatta influenced Ms. Snider's decision to terminate Plaintiff." Mot. at 13. Plaintiff also identifies testimony which purportedly demonstrates that Ms. Snider's decision was based in part on information provided to her by Ms. VanNatta. *Id.* at 13–14. Notably, however, the cat's paw theory of liability was never briefed or even raised by Plaintiff in response to the motion for summary judgment.² Rather, in her response brief, Plaintiff argued as follows:

> Plaintiff may establish a factual question whether Defendant's proffered reason is pretextual as there is a factual dispute regarding whether Plaintiff violated any policy. First, Plaintiff's testimony creates a factual question of whether Ms. VanNatta authorized Plaintiff to complete the transaction, i.e. paying a vendor for services with gift certificates. Plaintiff testified that it was actually Ms. VanNatta that came up with the idea of paying the vendor with gift certificates. Second, Defendant's Cash Policy provides that Plaintiff may pay vendors without approval for up to $100. In this case, the services rendered by the vendor was under $100 and, therefore, within Plaintiff's authority to issue the payment. This factual dispute goes to the very basis of Defendant taking action. If a fact finder believed Plaintiff's testimony on this point, Defendant would then have terminated Plaintiff for actions of Plaintiff that had been approved by Defendant. This alone should give rise to a factual question on the issue of pretext, especially in light of Defendant's failure to follow its Cash Policy.

Resp. at 17, ECF No. 37. Although Plaintiff's response brief addressed the factual dispute as to whether Ms. VanNatta authorized the transaction, the response brief made no attempt to bridge the gap between that factual dispute and Ms. Snider's decision to terminate Plaintiff. Pursuant to

---

² Interestingly, Plaintiff did question Ms. Snider about the cat's paw theory during her deposition:
Q: You rely on your district managers to give you as the director of operations accurate information; right?
A: I do expect to receive accurate information.
Q: Did you ever hear or read the Aesop's Fable about the monkey and the cat and the chestnut?
A: No, I'm unfamiliar.
Q: It's called the Cat's Paw. Have you ever heard of that?
A: No.

the honest belief rule, Ms. Snider was entitled to reasonably rely on the set of facts she had before her when she made the decision to terminate Plaintiff's employment. In her response brief, Plaintiff offered no evidence that Ms. Snider was ever informed by Plaintiff or anyone else that Ms. VanNatta allegedly approved the transaction. To the contrary, Ms Snider's testimony reflected that she had no such knowledge. Order at 21 (citing Snider Dep. at 34). In her motion for reconsideration, Plaintiff now attempts to identify evidence to the contrary in order to support Plaintiff's newly developed cat's paw theory. This theory will not be entertained for the first time on a motion for reconsideration. *See Bingham v. Bank of Am.*, 2010 WL 3952272, at *1 (E.D. Mich. Oct. 8, 2010) (quoting *Scottsdale Insur. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir.2008) ("We have found issues to be waived when they are raised for the first time in motions for reconsideration."); *Hamilton v. Gansheimer*, 536 F.Supp.2d 825, 842 (N.D. Ohio 2008 ("Courts should not reconsider prior decision where the motion for reconsideration either renews arguments already considered or proffers new arguments that could, with due diligence, have been discovered and offered during the initial consideration of the issue.")). For the foregoing reasons, the motion for reconsideration will be denied.

### III.

Accordingly, it is **ORDERED** that Plaintiff's motion for reconsideration, ECF No. 39, is **DENIED.**

                                                                   s/Thomas L. Ludington
                                                                  THOMAS L. LUDINGTON
                                                                  United States District Judge

Dated: June 21, 2018

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 21, 2018.

         s/Kelly Winslow
         KELLY WINSLOW, Case Manager